IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **ROZALIYA KRAVCHENKO**<br>10603 Cowden Street<br>Philadelphia, PA 19116<br><br>*Plaintiff,*<br><br>vs.<br><br>**HANGER ORTHOTICS &<br>PROSTHETICS**<br>3110 Grant Avenue<br>Philadelphia, PA 19114<br><br>*Defendant.* | CIVIL ACTION<br><br>NO. _____<br><br>JURY TRIAL DEMANDED |

## COMPLAINT

Plaintiff, by and through her undersigned counsel, hereby files the following Complaint against Defendant:

### INTRODUCTION

1. Plaintiff initiates this action to seek redress against Defendant, her former employer, for unlawful pregnancy discrimination and retaliation in violation of Title VII of the Civil Rights Act of 1964, as amended, the Pennsylvania Human Relations Act, 43 P.S. § 951, *et seq.*, and other applicable federal and state law.

### PARTIES

2. Plaintiff is Rozaliya Kravchenko, an adult individual currently residing at the above address.

3. Defendant, Hanger Orthotics and Prosthetics, is a corporation that is believed and therefore averred to have been created and existing pursuant to the laws of the State of Delaware with a place of business at the above address.

4. At all times relevant hereto, Defendant acted by and through its agents, servants, and employees, each of whom, at all times relevant, acted within the scope of his or her job duties.

5. Defendant is an "employer" within the meaning of Title VII of the Civil Rights Act because it is engaged in an industry affecting interstate commerce and because it maintained or maintains fifteen ("15") or more employees for each working day in each of twenty ("20") or more weeks in the current or preceding calendar year.

6. Defendant also maintains a sufficient number of employees to satisfy the jurisdictional prerequisites of the Pennsylvania Human Relations Act (requiring four or more employees).

## JURISDICTION and VENUE

7. All of the allegations contained in the foregoing paragraphs of this Complaint are incorporated by reference herein as if the same were set forth at length.

8. The Court may properly maintain personal jurisdiction over Defendant because Defendant's contacts with this state and this judicial district are sufficient for the exercise of jurisdiction over Defendant to comply with traditional notions of fair play and substantial justice, satisfying the standard set forth by the Supreme

Court of the United States in *International Shoe Co. v. Washington*, 326 U.S. 310 (1945) and its progeny.

9. The United States District Court for the Eastern District of Pennsylvania may exercise original subject-matter jurisdiction over the instant action pursuant to 28 U.S.C. §§ 1331 and 1343(a)(4) because it arises under the laws of the United States and seeks redress for violations of civil rights.

10. The Court may also maintain supplemental jurisdiction over state law claims set forth herein pursuant to 28 U.S.C. § 1367(a) and Rule 18(a) of the Federal Rules of Civil Procedure because they are sufficiently related to one or more claims within the Court's original jurisdiction in that they form part of the same case or controversy.

11. Venue is properly laid in the Eastern District of Pennsylvania pursuant to 28 U.S.C. §§ 1391(b)(1) and 1391(b)(2) because Defendant is located in and conducts business in this judicial district and because a substantial part of the acts and/or omissions giving rise to the claims set forth herein occurred in this judicial district (Plaintiff was employed in the Eastern District of Pennsylvania at the time of the illegal actions set forth herein).

## PROCEDURAL and ADMINISTRATIVE REMEDIES

12. All of the allegations contained in the foregoing paragraphs of this Complaint are incorporated by reference herein as if the same were set forth at length.

13. Plaintiff has satisfied the procedural and administrative requirements for proceeding with an action under the Title VII.

14. Plaintiff filed timely written charges of discrimination with the Philadelphia office of the Equal Employment Opportunity Commission ("EEOC") and the Pennsylvania Human Relations Commission alleging pregnancy discrimination on or around March 14, 2013 (No. 530-2013-01826).

15. The instant action is timely because it is initiated at least ninety ("90") days after the issuance of a Right to Sue Letter by the EEOC as required by Title VII.

16. Plaintiff has exhausted her federal and state administrative remedies as to the allegations of the instant Complaint.

## FACTUAL BACKGROUND

17. All of the allegations contained in the foregoing paragraphs of this Complaint are incorporated by reference herein as if the same were set forth at length.

18. Plaintiff was employed by Defendant in or around 2009 through a "temp" agency.

19. By way of background, on or about July 2, 2009 Defendant and its agents became aware that Plaintiff was pregnant and required a closer parking space.

20. As a result of Plaintiff's pregnancy, Plaintiff was terminated in 2009.

21. On or about February 13, 2013, the Defendant repeated its discriminatory practice and terminated Plaintiff as a result of her pregnancy.

22. By way of background, in 2009 Plaintiff interviewed with a temporary agency and was placed at Defendant for a long-term position.

4

23. The particular location was in a building in which the owner did not wish Defendant's employees to park on their lot.

24. After a couple of weeks of parking in a different lot, at an apartment complex, which was up a hill, it became very difficult for Plaintiff as she was six months pregnant and suffered from swollen feet and aches.

25. Plaintiff brought in a doctor's note stating that she was under prenatal care and could not walk for long distances.

26. Even though the building owner was fine with my accommodation, Plaintiff received an e-mail the same evening, stating that Defendant had decided to end her employment assignment as she was not fit for a long-term position.

27. The e-mail further instructed Plaintiff to not return to the site.

28. Plaintiff's mother was a patient of Hanger and as a result Plaintiff would accompany her a few times to her appointments in December 2012.

29. The practitioners and office administrator, Anne Brody, who knew Plaintiff her previous tenure in 2009, advised Plaintiff to submit her resume to the senior office administrator Madeline.

30. It is believed and therefore averred that around this time, the Defendant was looking for an office administrator who knew the field.

31. Since Plaintiff's father was a prosthetic practitioner for over forty ("40") years and since Plaintiff had worked for Defendant before, Plaintiff did not require training and would have been a good fit for the position.

5

32. Plaintiff received phone calls from the practitioner himself saying that she should submit her resume as soon as possible so that the Defendant could get the ball rolling.

33. Plaintiff submitted her resume to Defendant.

34. On February 4, 2013, Plaintiff was scheduled for an interview.

35. During the interview, one of the higher ups, Ernie Gramaglia, asked Plaintiff why she stopped working for Defendant in 2009.

36. When Plaintiff explained of the facts set forth herein, Gramaglia said, "I'm surprised you didn't sue us for that."

37. At the time of Plaintiff's interview, she was wearing a long coat, a long tie-up shirt and was sitting the whole time.

38. At the time of Plaintiff's interview, nobody noticed that Plaintiff was pregnant.

39. The two interviewers that were present, Madeline McCourt and Ernie Gramaglia, stated that even though they had other interviews scheduled, they had their mind set on Plaintiff.

40. McCourt and Gramaglia told Plaintiff they would contact her by the end of the week to complete paperwork.

41. Plaintiff was also advised that because it took a couple of weeks to process intake information for new hires, she would be paid by their staffing agency for 2-3 weeks.

42. It is believed and therefore averred that Defendant told Plaintiff she would be paid through its staffing agency so that Plaintiff could start working right away.

43. It is believed and therefore averred that Defendant wanted Plaintiff to start working right away since one of its employees, Anne Brody, was leaving and her position required immediate replacement at its Grant Avenue location.

44. On or about February 6, 2013, Plaintiff was contacted by Madeline and asked to come in the following day with a voided check, a color copy of her driver's license and her social security card.

45. Plaintiff arrived with the requested documents on February 7, 2013 and showed up to her first day of work on February 11, 2013.

46. Prior to leaving her house for her first day at work, Plaintiff wrote Madeline an email asking her if parking close to the entrance would be an issue as she had back aches and pains due to an injury sustained in a car accident in 2010.

47. There was no reply to the e-mail, but when Madeline arrived at the office that morning she stated that Ernie informed her that only "Debra" was allowed to park close to the entrance as a result of knee problem.

48. Plaintiff was advised that she could try emailing Ernie herself.

49. Plaintiff did in fact e-mail Ernie, but did not receive a response.

50. During Plaintiff's first day at work, Madeline and another employee kept looking at her stomach-area or "belly".

51. Plaintiff could not hide the fact that she was pregnant because she was obligated to wear scrubs.

52. The constant staring at Plaintiff's stomach-area or "belly" made her very uncomfortable.

7

53.  At one point thereafter, Madeline said to Plaintiff, "I wish you would have told us about your situation during the interview."

54.  The following day, Plaintiff got a phone call at the office from one of the higher ups, "Roxanne".

55.  Roxanne called to "welcome" Plaintiff and also made the comment, "I wish you would have advised us of your situation during the interview as it would be a consideration issue, well we will see what Ernie says."

56.  On or about February 13, 2013, Plaintiff felt like management was very short with her and did not even want to speak to her.

57.  Later that evening at around 5:17 pm, Plaintiff received a phone call from Defendant's staffing agency whom she had never spoken to before.

58.  The caller advised Plaintiff that Defendant had decided to terminate her employment, as she was "not fit" for a long-term position.

59.  The Defendant's discriminatory actions caused Plaintiff a great amount of stress and emotional distress, as Plaintiff was passionate about the position with Defendant.

60.  Plaintiff hoped to build a career from the position before she unlawfully discriminated against by the Defendant.

## COUNT I
### Title VII – Pregnancy Discrimination

61.  All of the allegations contained in the foregoing paragraphs of this Complaint are incorporated by reference herein as if the same were set forth at length.

62. In terminating Plaintiff as a result of her pregnancy in 2013 and in taking other adverse employment actions against Plaintiff, the Defendant engaged in unlawful pregnancy discrimination, in violation of Title VII of the Civil Rights Act.

63. As a result of Defendant's unlawful discrimination, Plaintiff has suffered damages as set forth herein.

## COUNT II
### Title VII- Retaliation

64. All of the allegations contained in the foregoing paragraphs of this Complaint are incorporated by reference herein as if the same were set forth at length.

65. In terminating Plaintiff in 2013 as a result of her request for an accommodation due to her pregnancy, the Defendant retaliated against Plaintiff for engaging in a protected activity pursuant to Title VII of the Civil Rights Act.

66. "But for" Plaintiff's request to park closer to the building and her interactions with Defendant's agents relating to her pregnancy, the Defendant would not have took an adverse employment action against Plaintiff.

67. As a result of Defendant's unlawful retaliation, Plaintiff has suffered damages as set forth herein.

## COUNT III
### Pennsylvania Human Relations Act

68. All of the allegations contained in the foregoing paragraphs of this Complaint are incorporated by reference herein as if the same were set forth at length.

69. The foregoing pregnancy discrimination and retaliation by Defendant also violates the Pennsylvania Human Relations Act, 43 P.S. § 951, *et seq.*

70. As a result of Defendant's violations of the Pennsylvania Human Relations Act, Plaintiff has suffered damages, as set forth herein.

## COUNT IV
### Intentional Infliction of Emotional Distress

71. All of the allegations contained in the foregoing paragraphs of this Complaint are incorporated by reference herein as if the same were set forth at length.

72. Defendant's agents, by extreme and outrageous conduct, intentionally or recklessly caused severe emotional distress to Plaintiff.

73. Defendant is liable for the conduct of its agents under the doctrine of *respondeat superior*.

74. The Defendant's acts were intentional in nature and committed because of reasons personal to the Defendant's supervisors and agents.

75. As such, Plaintiff's IIED claim is not barred by the Pennsylvania's Workmen's Compensation Act as it fits into the narrow exception created by Subsection 301(c)(1).

76. The Defendant's actions were such that an average member of the community would arouse resentment against the Defendant leading to a conclusion of outrageousness.

77. As a result of Defendant's unlawful actions, Plaintiff has suffered damages as set forth herein.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff prays that the Court enter judgment in her favor and against Defendant and that it enter an Order as follows:

a. Defendant is to be permanently enjoined from discriminating or retaliating against Plaintiff on any basis prohibited under applicable federal and state law;

b. Defendant is to be prohibited from continuing to maintain its illegal policy, practice, or custom of discriminating or retaliating against employees based on any basis prohibited under applicable federal and state law and be ordered to promulgate an effective policy against such discrimination and to adhere thereto;

c. Defendant is to compensate Plaintiff, reimburse Plaintiff, and to make Plaintiff whole for any and all pay and benefits Plaintiff would have received had it not been for Defendant's illegal actions, including but not limited to back pay, front pay, salary, pay increases, bonuses, medical and other benefits, training, promotions, pension, and seniority. Plaintiff should be accorded those benefits illegally withheld from the date she first suffered discrimination at the hands of Defendant until the date of verdict;

d. Plaintiff is to be awarded actual damages, as well as damages for the pain, suffering, and humiliation caused to her by Defendant's actions as permitted by applicable law;

e. Plaintiff is to be awarded punitive damages as permitted by applicable law, in an amount believed by the Court or trier of fact to be appropriate to punish Defendant for its willful, deliberate, malicious, and outrageous conduct, and to deter Defendant or any other employees from engaging in such misconduct in the future;

f. Plaintiff is to be accorded any and all other equitable and legal relief as the Court deems just, proper, and appropriate;

g. Plaintiff is to be awarded the costs and expenses of this action and reasonable legal fees as provided by applicable federal and state law;

h. Any verdict in favor of Plaintiff is to be molded by the Court to maximize the financial recovery available to Plaintiff in light of the caps on certain damages set forth in applicable federal law;

i. Plaintiff is to be granted such additional injunctive or other relief as she may request during the pendency of this action in an effort to ensure Defendant does not engage – or ceases engaging - in illegal retaliation against Plaintiff or other witnesses to this action;

j.  The Court is to maintain jurisdiction of this action after verdict to ensure compliance with its Orders therein.

k.  Plaintiff's claims are to receive a trial by jury to the extent allowed by applicable law. Plaintiff has also endorsed this demand on the caption of the Complaint in accordance with Federal Rule of Civil Procedure 38(b).

Respectfully submitted,

KOLMAN ELY, P.C.

_____
Timothy M. Kolman, Esquire
Wayne A. Ely, Esquire
W. Charles Sipio, Esquire
414 Hulmeville Avenue
Penndel, PA 19047
(T) 215-750-3134 / (F) 215-750-3138
tkolman@kolmanlaw.net
wely@kolmanlaw.net
wcsipio@kolmanlaw.net

*Attorneys for Plaintiff*

Dated: February 17, 2014